[L. A. No. 5808. In Bank.—April 26, 1921.]

## MARTHA J. GRAY, Respondent, v. EVERETT E. GRAY, Appellant.

[1] JUDGMENTS—WAIVER OF FINDINGS—INTENDMENTS IN FAVOR OF JUDGMENT.—Where findings are waived every intendment is in favor of the judgment, and, therefore, upon all the issues raised by the pleadings, it must be presumed that the trial court, in effect, found all the facts necessary to support the judgment.

[2] ACTION FOR MAINTENANCE—DESERTION AND EXTREME CRUELTY— SUFFICIENCY OF EVIDENCE.—In this action for maintenance it is held that conceding it to be the law that if the defendant honestly, though mistakenly, believed the plaintiff to have been unfaithful to him, he would have been justified in ·abandoning her and charging her with adultery and repeating said charge to certain of her friends and relatives and repeatedly stating to her and to her friends and relatives that he was not the father of the child born to her during wedlock with him, and, therefore, would be absolved in the eyes of the law from the charge of desertion and extreme cruelty, still the evidence in the case as a whole warrants the inference which the court doubtless drew therefrom that the defendant's abandonment of the plaintiff and his charging her with adultery were not justified or made in good faith.

APPEAL from a judgment of the Superior Court of Los Angeles County. J. P. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Earl Rogers, Harrison Cassell and G. Stuart Silliman for Appellant.

Samuel D. Weil for Respondent.

LENNON, J.—Plaintiff and defendant are husband and wife, and in this action for separate maintenance, instituted under the provisions of section 137 of the Civil Code, the plaintiff sought and secured a decree directing the defendant to pay her the sum of fifty dollars per month for the permanent maintenance and support of herself and minor child. One of the three causes of action pleaded in the plaintiff's complaint was abandoned and the cause proceeded to trial upon the remaining two causes of action, namely, willful desertion and extreme cruelty. The deser-

tion complained of consisted of the alleged refusal of the defendant, willfully and without any sufficient cause, to live with the plaintiff, and his willful and causeless living separate and apart from her from the sixteenth day of August, 1917, up to the time of the institution of the action on October 30, 1917. The extreme cruelty pleaded was based upon allegations of the plaintiff's grievous mental suffering and bodily ill health, resulting from the conduct of the defendant in falsely charging the plaintiff with adultery and the repetition of said charge to certain friends and relatives of the plaintiff, coupled with the statement of the defendant, repeatedly made to the plaintiff and to her said friends and relatives, that he was not the father of the child born to the plaintiff during wedlock with the defendant. The defendant, answering the plaintiff's complaint, denied the alleged desertion and the charge of cruelty, but admitted that he did tell plaintiff that he was not the father of the child born to plaintiff, and alleged that in truth and in fact he was not the father of that child. It should be noted that the answer of the defendant failed to deny the allegation of the plaintiff's complaint to the effect that he had charged her with adultery and had repeated said charge to certain friends and relatives of the plaintiff, and, therefore, it may be taken as an admitted fact in the case that he made said charge against the plaintiff and disseminated it among her friends and relatives. At the conclusion of the trial of the case the court announced that it would render judgment for the plaintiff, and thereupon, findings having been waived, the judgment appealed from was entered in favor of the plaintiff.

[1] Findings having been waived, every intendment is in favor of the judgment, and, therefore, upon all of the issues raised by the pleadings, it must be presumed that the trial court, in effect, found all the facts nécessary to support the judgment in favor of the plaintiff. (*Antonelle* v. *City Hall Commrs.*, 92 Cal. 228, [28 Pac. 270]; *Bruce* v. *Bruce*, 16 Cal. App. 353, [116 Pac. 994].) The only point made in support of the appeal is the claimed insufficiency of the evidence to warrant and support the implied findings of the trial court which, had findings in fact been made, must necessarily have been to the effect that the defendant had, without cause, deserted and abandoned the plaintiff

and was guilty of extreme cruelty toward the plaintiff in the particulars narrated in the plaintiff's complaint.

We are satisfied, and it is conceded by counsel for appellant, that the evidence adduced upon the whole case amply supports the implied findings of willful abandonment and extreme cruelty upon which the judgment rests, unless, as counsel for appellant contend, it can be fairly said that the evidence compels the conclusion that the defendant had good cause for believing the plaintiff unfaithful to him, and that he was, therefore, justified in separating from her and charging her with adultery and asserting to her and to her friends that he was not the father of the child born to her. [2] Conceding it to be the law that, if the defendant honestly, though mistakenly, believed the plaintiff to have been unfaithful to him, he would have been justified in doing and saying the things charged against him and, therefore, absolved in the eyes of the law from the charge of desertion and extreme cruelty, still we are satisfied that the evidence as a whole warrants the inference which the court doubtless drew therefrom that the defendant's abandonment of the plaintiff and his charging her with adultery were not justified or made in good faith.

The evidence offered and received in support of the plaintiff's case, in substance and in effect, is as follows: Plaintiff and defendant intermarried in the city of Los Angeles on January 9, 1907, and they lived together as husband and wife until August 9, 1917, when the defendant separated from the plaintiff and refused further to live with her. During the first nine years of their married life the couple were childless, but on November 13, 1916, a child was born to them. For about nine months thereafter the couple continued to live together harmoniously until on or about the said ninth day of August, 1917. The defendant came home late in the evening of that day very much excited. The plaintiff at that time was in the family bedroom with the baby. The defendant went in there, opened the drawers of a chiffonier, shuffled his hands around the tops of things therein contained, and then went into another bedroom and did the same thing with the dresser there. He then came into the room where plaintiff and the baby were. He then went out into the kitchen and the plaintiff followed him there and asked him what he was

doing with the revolver which he had. He replied that he had just begun to realize that she, meaning the baby, did not belong to him. The plaintiff asked what put that thought in his head. He said that he had had visions. The plaintiff was so shocked and stunned by the declaration and conduct of the defendant that she had nothing to say at that time. On the following day the plaintiff sought an explanation from the defendant of his conduct and his statement on the night before and all that he would say was that he had had visions. When the defendant came home on the following evening, he paid no attention to the plaintiff or to the baby, and during the dinner of which he partook he had nothing to say to either the plaintiff or the baby. After dinner he went into the front room, where he sat down in a Morris chair and slept for a while, and then went out for a walk. He returned about midnight, very much excited, and when he came into the room where the plaintiff was, said to her: "Who would have ever thought that the thing could have happened"? The plaintiff's cousin was present at this time and she said to the defendant that he might be wrong in his belief; that his suspicions may not have been well founded, and he replied by saying, no, that his father had materialized and come to him, and that his father would not have done so if it was not that his father was such a good man. The next morning the defendant left the house for his work as usual, but the plaintiff did not hear from him until several days later, and then only when the plaintiff's cousin got into communication with the defendant by telephone, to whom he said that he was not coming home any more. Later on, in the middle of the month of September, the plaintiff called upon the defendant at the store where he was employed, when he again declared to the plaintiff that the child was not his, and told the plaintiff to have the father of the child support it. To which the plaintiff replied that he was the father of the child and that she wanted him, as its father, to support it. He again declared that he was not the father of the child and that he would not support it, and abruptly left the plaintiff. A few days later defendant called upon the plaintiff at her home for the purpose of talking things over and making arrangements as to what they should do temporarily. Never at any time did the defendant give any

reason to the plaintiff as to why he believed he was not the father of the child, except that the spirit had told him that he was not the father. From the day of their marriage, on January 9, 1907, to the day that the defendant left the plaintiff, in 1917, they lived together continuously as husband and wife. From the time the child was born and up to the time that the defendant separated from the plaintiff, he was very kind and attentive to the child. When he would come home in the evenings he would always see her the first thing ' and then, after his dinner, he would pick her up and play with her, and oftentimes took her out for a ride in his automobile and always liked to have her sitting in the seat beside him. He always carried the baby to the front door in the mornings and there said good-by to her. Prior to August 9, 1917, the defendant never at any time said anything to the plaintiff, directly or indirectly, concerning the paternity of the child and, until then, the relations of the plaintiff and the defendant were harmonious and affectionate. The child resembles the defendant in a marked degree. From the day of their marriage up to the day the baby was born, the plaintiff and the defendant continuously and habitually occupied the same bed. All during her married life the plaintiff was desirous of having a child and, with that end in view, sought and secured medical treatment for the purpose of enabling her to become pregnant with child. The physician who attended her diagnosed her case as one of an undeveloped uterus. He so successfully treated her that she became pregnant.

The defense interposed by the defendant, namely, that he was justified in believing the plaintiff to have been unfaithful to him and, therefore, was warranted in separating from her and charging her with adultery, was rested primarily upon the fact that, although the plaintiff and the defendant had lived together as husband and wife during the several years preceding the birth of the child in question, the plaintiff had never been *enciente* until the said child was conceived. No competent showing, however, was made or attempted to be made, upon behalf of the defendant, that he was impotent during all or any part of the time that he and the plaintiff lived and cohabited together as husband and wife, and, therefore, the circumstance that the plaintiff had failed to conceive during the first several years of her married life cannot in and of itself be held

to be sufficient to warrant the belief in the mind of the defendant that the child born to her was fathered by someone other than himself. It is claimed, however, that this circumstance, coupled with a claimed indiscretion of the plaintiff, testified to by the defendant, warranted the defendant in doubting the chastity of the plaintiff and justified him in declaring his doubts to her, to her relatives, and to her friends.

It must be admitted that the circumstances connected with the claimed indiscretion might well arouse the suspicion and indignation of the defendant and, if believed by the trial court, would have justified a further finding that it ultimately culminated in the conviction in the mind of the defendant that plaintiff was untrue to him. In this connection it is asserted upon behalf of the plaintiff that she offered to take the witness-stand in rebuttal and denial of the defendant's testimony upon this phase of the case, but that the trial court waved her aside and declined to hear her upon the theory, apparently, that a denial of the defendant's testimony in the particulars stated was wholly unnecessary. This does not appear of record and therefore we may not now consider it. The trial court was, however, at liberty to believe or disbelieve the defendant's testimony upon this as well as upon every other phase of the case, and the fact does appear of record that the defendant at the time of the claimed indiscretion did not attach much, if any, significance to the incident and made no complaint thereof until the time of the trial.

The fact that the defendant did not consider the incident in question of any significance is best indicated by his testimony to the effect that until the plaintiff became pregnant he never had occasion to doubt her chastity. The incident in question, so the defendant testified, occurred on January 15, 1916, and the record shows that it was in April, 1916, that the defendant discovered that his wife was pregnant. The defendant's testimony in this behalf doubtless impelled the trial court to treat the incident of the plaintiff's claimed indiscretion as indifferently as did the defendant at the time of its occurrence.

The order appealed from is affirmed.

Wilbur, J., Sloane, J., Olney, J., Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.