[Civ. No. 3952.   Second Appellate District, Division Two.—June 28, 1924.]

## JOHN GRANT, Appellant, v. WILHELMINA GRANT, Respondent.

[1] DIVORCE—DESERTION—BELATED OFFER OF RECONCILIATION.—Under section 102 of the Civil Code, an offer of reconciliation tendered by the deserting party, if made after the deserted party's cause of action for divorce has ripened, is too late, in that it does not affect the right to sue upon such cause of action, nor give to the deserting party a cause of action for desertion because of a refusal of the offer.

[2] ID.—REFUSAL OF OFFER OF RECONCILIATION—RIGHT TO SEPARATE MAINTENANCE.—Under section 137 of the Civil Code, when the

---

1. See 9 Cal. Jur. 674; 9 R. C. L. 373.
2. See 1 Cal. Jur. 1024.

wife's cause of action for divorce on the ground of desertion has ripened, her cause of action for separate maintenance has ripened, and this latter cause of action is not affected by her subsequent refusal to accept the husband's belated offer of reconciliation.

[3] ID. — OFFER OF RECONCILIATION—GOOD FAITH—AMBIGUOUS TERMS —SEPARATE MAINTENANCE—FINDINGS—JUDGMENT.—In this action by the husband for divorce on the ground of desertion, predicated upon the refusal of the deserted wife to accept his offers of reconciliation, notwithstanding the trial court found that the husband had in good faith endeavored to effect a reconciliation with the wife, that he had endeavored to resume the marital relation, and that he had provided for her a suitable home, the court having further found, upon conflicting evidence, that the husband's letters of invitation "were so ambiguous and contained so many expressed conditions that the defendant acting in good faith did not understand or believe said letters contained *bona fide* and good invitations," judgment properly passed against plaintiff on his complaint, and in favor of defendant under her cross-complaint for separate maintenance.

[4] ID.—FINDINGS — EVIDENCE — APPEAL. — Upon appeal by plaintiff from the judgment in favor of the defendant (and cross-complainant) in such action, the appellate court in reviewing the evidence is not to determine whether it would have made the same finding which was made by the trial court, but whether the finding actually made was based upon evidence in which there was a substantial conflict. (Opinion on denial of rehearing.)

(1) 19 C. J., p. 67, secs. 125, 126.    (2) 30 C. J., p. 1078, sec. 872. (3) 30 C. J., p. 1078, sec. 872.    (4) 4 C. J., p. 886, sec. 2855.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge. Affirmed.

The facts are stated in the opinion of the court.

Duke Stone for Appellant.

John H. Miller for Respondent.

WORKS, J.—This is an action for divorce in which the defendant cross-complained for separate maintenance. Judgment passed against plaintiff under his complaint and in

3. See 9 Cal. Jur. 672; 9 R. C. L. 373.
4. See 2 Cal. Jur. 921; 2 R. C. L. 204.

favor of defendant under her cross-complaint. Plaintiff appeals.

The appeal is prosecuted under what is known as the alternative method, but neither of the counsel for the respective parties has complied with the provision of section 953c of the Code of Civil Procedure to the effect that in the conduct of appeals pursuant to that method ''the parties must . . . print in their briefs, or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court.'' Fugitive portions of the record, indeed, are printed in each of the briefs, but they present no intelligible basis upon which to consider the points upon which it is contended that the judgment should be reversed. There are references by page to the typewritten transcript of the evidence, but even these instances of avoidance of the provision of the code, when followed up, do not exhibit an adequate view of the litigation for the purposes of the appeal. As the cause is of grave importance to the parties and as the transcript of the evidence consists of but 150 pages, we have concluded to waive in this instance the requirement of the code, to the end that the parties may not be penalized because of the neglect of their counsel, and have read the transcript in full. We have also found it necessary to peruse the clerk's transcript of the pleadings, findings of fact, and judgment. We cannot forbear to mention these circumstances in what we fear, after all, may be a vain attempt to induce the profession to observe more narrowly the rule we have mentioned. Violations of it are so frequent that they increase the labors and therefore impede the work of the courts of review of the state. We indulge the fond but perhaps delusive hope that these remarks may immerse the profession in a wave of reform.

Appellant and respondent separated in Chicago on December 26, 1909, in which city they had theretofore resided as husband and wife. Appellant then withdrew from the family home and his wife remained in it. The husband resided at another place in Chicago for sixteen months after the separation, at the end of which period he removed to California, where he has ever since remained. Some time after he arrived in this state he wrote to the wife a letter in which he invited her to come to him in order that they might take up again their marital duties and obligations, but she ig-

nored the request. During the years intervening between the date of that letter and the commencement of this cause appellant wrote to his wife frequent missives of the same character. She continued, not actually to refuse his requests, but to ignore them, and this action was the result. The complaint consists of two counts. The first of these alleges acts of cruelty occurring at and before the time of the separation of December 26, 1909, while the second avers a desertion on or about January 1, 1912, which was at the time of the first letter in which the husband invited the wife to return to him. The trial court found against the allegation of cruelty. The nature of its finding as to the second count will immediately be stated.

Upon the issue of desertion, tendered by the complaint, the court found that the husband had in good faith endeavored to effect a reconciliation with the wife, that he had endeavored to invite her to resume the marital relation, and that he had provided for her a suitable home in California. To this matter we shall hereafter refer as the first portion of the court's finding. It was further found, however, that the husband's letters of invitation "were so ambiguous and contained so many expressed conditions that the defendant acting in good faith did not understand or believe said letters contained *bona fide* and good faith invitations" to become reconciled with him. Other facts which we need not mention were also covered by the finding. Appellant's first point is that he was entitled to a decree pursuant to the first portion of the finding, citing *McMullin* v. *McMullin*, 123 Cal. 653 [56 Pac. 554], notwithstanding the other facts found. Another point made is that "plaintiff was entitled to a decree of divorce upon the evidence and there is no foundation in fact for the court's findings that defendant had any ground whatever in rejecting the offer of reconciliation." The third and last point presented is that, under *Volkmar* v. *Volkmar*, 147 Cal. 175 [81 Pac. 413], the trial court erred in awarding the wife separate maintenance on the ground that such an award cannot be made "when the wife refuses to live with her husband, unless she is justified by reason of his fault." We are not called upon to decide any of these three questions, although we shall at the close of the opinion consider two points closely related to the

third, but a statement of them all is a necessary preface to the determination of a question which we shall now discuss.

As a basis for her cause of action for separate maintenance the wife alleged a desertion by her husband on December 26, 1909. The trial court found upon conflicting evidence that this allegation was true, but the finding is neither quoted nor mentioned in the brief of either party. Under the finding the wife had a ripened and complete cause of action for divorce on December 26, 1910 (Civ. Code, sec. 107). [1] It is provided by section 102 of the Civil Code: "If one party deserts the other, and before the expiration of the statutory period required to make the desertion a cause of divorce, returns and offers in good faith to fulfill the marriage contract, and solicits condonation, the desertion is cured." Under this statute the courts have naturally determined that an offer of reconciliation tendered by the deserting party is too late if made after the deserted party's cause of action for divorce has ripened, in that it does not affect the right to sue upon such cause of action, nor give to the deserting party a cause of action for desertion because of a refusal of the offer. (See 9 Cal. Jur., tit. "Divorce and Separation," sec. 43.) It is apparent from the mere statement of this rule, in connection with the finding that appellant was guilty of desertion on December 26, 1909, that respondent did not desert him on January 1, 1912, that, obviously, his first and second points disappear, and that, equally obviously, his cause of action based on a desertion falls to the ground. The point arising thus under section 102 of the code is argued by neither of the parties, but our attention is nevertheless startlingly attracted to it by expressions in the briefs. It is plainly brought into the case by appellant's statement of all three of his points, as we have set them forth above, and the first sentence of respondent's brief is: "The appellant and respondent were married in Chicago, Illinois, on February 8, 1890, and lived together as husband and wife until December 26, 1909, when the appellant deserted his wife." Under these circumstances we are unable to avoid a decision of the question.

[2] Not only are appellant's first and second points answered by the finding that he deserted his wife in 1909, but his third point meets the same fate, *as that point is stated,* especially as the question he presents is based upon *Volk-*

*mar* v. *Volkmar, supra,* which was a divorce case. We must, however, state another point for the benefit of appellant, even if it must come to naught. Although section 102 of the Civil Code has the effect which we have ascribed to it upon questions of divorce, it was once decided that the rule is different as to the wife's suit for separate maintenance. In a suit of the latter character the supreme court said: "Willful desertion must continue for one year before it is a ground for divorce (Civ. Code, sec. 107) ; and it is provided in section 102 preceding that if, prior to the expiration of such time, the party deserting returns and offers in good faith to fulfill the marriage contract, and solicits condonation, the desertion is cured; and in *Benkert* v. *Benkert,* 32 Cal. 467, it was held that an offer to return, made after expiration of the time necessary to give the ground for divorce, will not, if refused, defeat the action of the injured party for divorce. Plaintiff contends, in support of her appeal, that a rule like that in *Benkert* v. *Benkert* should obtain in this case, and that the defendant's offer to return came too late. The cases, however, differ materially. (See *Hardy* v. *Hardy,* 97 Cal. 125, 130 [31 Pac. 906].) In *Benkert* v. *Benkert,* dissolution of the marriage bond was sought; here the plaintiff, as she testified at the trial, and as her suit shows, desires no divorce, but insists that the marriage relation shall continue. Manifestly, to enforce the duty of support against defendant when, as the court finds, he seeks in good faith to fulfill ·his obligations, and at the same time to exonerate plaintiff from the correlative duty of living with defendant at some reasonable place of abode (Civ. Code, sec. 156), would be granting of a limited divorce, for which our law makes no provision. (*Hagle* v. *Hagle,* 74 Cal. 608, 612 [16 Pac. 518] ; *Peyre* v. *Peyre,* 79 Cal. 336 [21 Pac. 838].) The cases touching this subject quite uniformly hold or imply that although the husband may have deserted the wife, yet the door for repentance is open for him, and is not necessarily closed by the fact of suit brought for maintenance; so, not because of any tenderness of the law for delinquent husbands, but because of its aversion to separation of the spouses" (*McMullin* v. *McMullin,* 123 Cal. 653 [56 Pac. 554]). If the opinion from which this quotation is taken is still the law, appellant's attempted offer for reconciliation was not too late, as affecting the wife's cause

of action for maintenance. The question whether *McMullin* v. *McMullin* is yet authority upon the point covered by the quotation is inspired by a comparison of the language of section 137 of the Civil Code as it has been since 1905 with its text as it stood when that case was decided in 1899 and had stood without material change for more than twenty years. In 1899 the section read, in part: "When the husband willfully deserts the wife she may, without applying for a divorce, maintain . . . an action against him for permanent support and maintenance," etc. This language was supplanted in the amended section of 1905 (Stats. 1915, p. 205) by the following: "When the wife has any cause of action for divorce as provided by section ninety-two of this code she may, without applying for a divorce, maintain . . . an action against him for permanent support and maintenance," etc. There seems little room for argument in considering the effect of this amendment upon the doctrine of *McMullin* v. *McMullin*. It is to us obvious that the language imported into the statute in 1905 gave to a wife the right to prosecute successfully her action for separate maintenance whenever an act of desertion upon the part of her spouse had ripened into a cause for divorce, and that his right to seek a reconciliation was cut off in so far as it could affect in any manner the prosecution to a successful issue of such a suit against him after the ripening of the cause of action. Strange to say, this question has never yet been passed on and can be resolved upon reason alone. By an amendment to section 137 adopted in 1907 (Stats. 1907, p. 82), the legislature inserted a passage which was in part similar in form to the language which was eliminated by the amendment of 1905. It was, "When the husband willfully deserts the wife or when the husband willfully fails to provide for the wife or," and it was inserted in such a manner as to make the sentence which is of interest here read as follows: "When the husband willfully deserts the wife or when the husband willfully fails to provide for the wife or when the wife has any cause of action for divorce as provided in section ninety-two of this code, she may," etc. The effect of the amendment of 1907, as ingrafted upon the language "when the wife has any cause of action for divorce," etc., can be nothing more than to create a right in the wife to prosecute her suit for maintenance upon a

"desertion" less than a year old. That she may now maintain such a suit appears to have been conceded by the opinion in *Gray* v. *Gray,* 185 Cal. 598 [197 Pac. 945]. It appears to us that the amendment of 1907 had no effect upon the amendment of 1905 as we have determined the latter to operate upon the question before us here and upon the doctrine of *McMullin* v. *McMullin, supra.* In short, and in response to a suggestion made in the opinion rendered in that case, it appears that section 137 of the Civil Code, as amended in 1905, provides, in effect, for the granting of a limited divorce.

In addition to what we have said as to the effect of section 137 as it has stood since 1905, we now come to a consideration of the finding of the trial court which we have mentioned in connection with the statement of appellant's first point. [3] It will be observed that the court found, substantially, that appellant endeavored in good faith to effect a reconciliation with his wife, but that because of the ambiguous character of his letters and the conditions stated in them she did not understand the nature of the offer. We are satisfied that this latter portion of the finding controls the portion touching upon appellant's good faith in making the offer. It is not too much to say that an offer of reconciliation, whatever the spirit in which it is made, is not really a completed offer unless it is so couched that the offeree may comprehend its meaning. Suppose such an offer were transmitted to one in a language which he did not understand. Suppose it were spoken to one stone deaf. Under such circumstances could the offer bind the receiver to accept it or suffer the consequences of a refusal? Surely not, and we think the answer must be the same here. We think that, under the finding of the court, irrespective of the effect of section 137, the right of respondent to press her cause of action for maintenance was not affected by the attempted offer. It remains only to remark that the portion of the finding dealing with the ambiguous character of the offer and with respondent's inability to understand it was made upon conflicting evidence. It must therefore stand.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 28, 1924, and the following opinion then rendered thereon:

THE COURT.—This cause is pending upon petition for rehearing. Before making formal disposition of the petition we deem it advisable to correct certain inaccuracies and misstatements and to meet arguments contained in it. It is said that appellant's "offer of reconciliation did not come too late. In this we have attacked and now attack the finding paragraph four . . . " The finding thus alluded to was the finding that appellant deserted respondent on December 26, 1909. No semblance of an attack has heretofore been made upon that finding and we correctly stated in our opinion that the finding was "neither quoted nor mentioned in the brief of either party." The attack now made in the petition for rehearing comes too late, but we nevertheless shall pay some attention to it. Appellant says that the parties to the cause did not finally separate until December 26, 1911, and that there is no evidence to show a final separation, much less a desertion, on December 26, 1909. This point is made after a quotation of a statement which, strangely enough, appears in respondent's brief, and which was not overlooked by us in the preparation of our opinion. Respondent says in her brief that the parties "continued to live together until, as appellant testifies, . . . 'I left the 27th day of March, 1911,' and 'I left home the 26th day of December, 1911,' " etc., and, in truth, there is a statement to that effect in the record testimony of appellant. However, the insertion of the year as 1911 occurred either through an error of the stenographic reporter who was at the trial or through a slip of appellant's tongue. This is so apparent from the entire record in the cause that we did not deem the circumstance worthy of mention in the opinion. That the statement of the year as 1911 is a palpable error appears from the following, as well as from many other matters in the record: The son of the parties testified: "Q. You remember the time that your father left home on December 26, 1911 or 1912— A. December 26, 1909, yes, sir." Not only does this interruption of counsel show, but the entire tenor of the examination of the witness shows, that he was testifying concerning the final separation of his father and

mother. Appellant himself testified: "Q. . . . before you came to California where did you live? A. In Chicago. . . . Q. And when did you leave Chicago? A. I left the 27th day of March, 1911. Q. When did you separate from your wife? A. I separated from my wife in—the 26th day of December, 1909. . . . Q. And did you write to your wife after coming out here? A. Yes, sir. Q. How long had you been here; about what date was it . . . that you wrote the first letter? . . . A. About May or June, 1911." Appellant on December 20, 1911, six days *before* his counsel now contends the final separation occurred, wrote respondent the letter upon which appellant bases his charge of desertion as of January 1, 1912. The letter is set out in the record, is quoted in full in appellant's brief and likewise in his petition for rehearing. It was postmarked, as shown in the petition for rehearing, as well as in the other places in which it appears, "Bell—Dec. 20, 1911—Cal." The letter begins, "As it is now about 2 years sins we have seen each other," etc. We need go no further in discussing the present point of appellant. So far as the factor of *time* is concerned, the trial court could have made no finding other than that appellant deserted respondent on December 26, *1909.*

Appellant insists that "there can be no justification for the court's finding that the letter offering reconciliation was ambiguous, for three reasons." The reasons assigned are, first, that the letter of December 20, 1911, containing the offer, was on its face unambiguous; second, that there was no testimony that respondent did not understand the letter, and, third, that respondent testified that her only reason for not accepting the offer was that she did not think it was made in good faith and that she believed appellant had left her without cause. This point we shall now consider at some length, as we decided it in our opinion by the mere statement at its close that the finding in question must stand for the reason that it was made on conflicting evidence. That the disposition thus made of the question was correct will be shown by a reference to a few circumstances disclosed by the record. In the first place, the court's finding was not alone that the offer was ambiguous, but that "the letters of invitation so written by the plaintiff were so ambiguous and contained so many expressed conditions," etc. Next, we state some features of the evidence. The letter of December

20, 1911, was written to respondent and to the son of the parties as joint addressees. It contained, in part, these statements: " . . . i for my part am willing to forgive all you wronged me, and we will forget all the old truble. . . . it is hard to have everything taken from me Home and Family when i am getting old and need you most. . . . My Son George, . . . bee good to your Mother, and help straignten her up—and if there is anything that I can do, please write me I am sending $10 by mail." Judging from the phraseology of its finding the trial court looked to other letters which passed between the parties as an aid in determining in what light respondent viewed the letter of December 20, 1911, which was evidently delivered to her in due course of mail not far from January 1, 1912, the date of the desertion alleged against her. The consideration of the other letters for such a purpose was surely proper, especially as they were received without objection, and we follow the same course, it being understood that we refer to but a few of the missives which were written by appellant to his wife, many of which, indeed, were not preserved and do not appear in the record. In a letter of February 2, 1915, it is said: "Dear Minnie I love you and always did but the Devil stebbed in between and robbed your heart away from me, i stayed long and waited to se if I ever should get piece, but it onley got wurce. So Wife get rigthsainness pray to our Savior, that you have forgotten read does words carefully and think them over." In a long letter of date December 15, 1919, appellant wrote in a joint missive to his wife and son: " . . . if you sometime want to make an trip to Los you are both welcome . . . " In a letter undated as to year, but, judging from its context, written to respondent as late as 1919 or 1920 and perhaps as late as 1921, it is said, "ecsept my indvetetion and come to live with me and be happy, but you must sureley keep pease with me no more like when I was with you, it was hard blow to me to be acused for wath I never dare think for . . . but ve forget all in the past." The punctuation and spelling in all the letters was very bad, the former often making it difficult for us to apprehend the meaning of the writer. Some such examples will be found in the excerpts above made. As to spelling we select the following instances, among many others, in addition to what is above set forth: Adtorny, altaugh, bierdday, tiered, cloce,

adtencion, glatt, simpaty, fruight, ornameltel and pictuare. Considering now another matter, it is to be observed that the parties are both Danes. Two of the letters from appellant to respondent, in fact, were written in the Danish language. The trial judge had respondent before him and thus had the opportunity to determine what knowledge of the English language was possessed by her and what ability she had to master letters written in such wretched English as are those now before us. In addition to all these circumstances, respondent gave testimony to the following effect concerning the letters: "Q. In no letter or card or communication of any sort that you had from him did he offer to provide money for your trip out here? A. No, sir, not once." In response to a line of questions concerning her testimony in a cause in Chicago to the effect that appellant had not asked her to return to him, respondent concluded: "Well, he hasn't asked me, only for a visit." She testified later: "Q. . . . Now, you never wrote any letters to him at all? A. No, sir. Q. You could write both English and Danish, couldn't you? A. Well, I could write Danish, anyway."

[4] The condition of the record being thus exhibited, we are not to determine whether we should have made the same finding which was made by the trial court, but whether the finding actually made was based upon evidence in which there was a substantial conflict. Upon this score we are satisfied with the conclusion reached in our original opinion.

It is said in the petition for rehearing that "An examination of the answer herein discloses that it was in no sense a cross-complaint." Counsel would have done well to examine the cross-complaint, for a pleading of that character, separate and aside from the answer appears in the record. The pleading is headed "Cross-Complaint for Maintenance" seems upon a cursory examination to state a cause of action, and closes with a prayer for a division of community property and for a permanent allowance for support and maintenance. Not only does a cross-complaint appear in the record, but there is also there shown an "Answer to Cross-Complaint" which is signed by appellant's counsel upon this appeal, the writer of the present petition for rehearing.

Rehearing denied.