[Civ. No. 6499. Fourth Dist. Mar. 20, 1962.]

JEROME J. O'CONNOR et al., Plaintiffs and Appellants, v. GRADY SKELTON et al., Defendants and Respondents.

Jack G. Whitney for Plaintiffs and Appellants.

Arthur F. H. Wright for Defendants and Respondents.

GRIFFIN, P. J.—This is an action for dissolution of a joint venture or partnership, for partition of real property and for an accounting. This matter heretofore came before this court on a motion to dismiss the appeal, which motion was denied. Part of the factual background is there related. (*O'Connor* v. *Skelton*, 195 Cal.App.2d 612 [15 Cal.Rptr. 894].)

FACTS

On April 1, 1944, plaintiff-appellants, husband and wife, entered into a partnership or joint venture agreement for the purchase of the Panama Hotel in San Diego, which building consisted of five stores on the ground floor and transient-type low-income rental rooms on the upper levels.

Plaintiffs owned a one-half interest therein and defendants owned the other one-half interest, as tenants in common. By stipulation of the parties, it was agreed that from the time the property was acquired by them until January 1949, there was no dispute over any division of the profits from the operation of the hotel property.

The Skeltons and the O'Connors, as a partnership or joint venture, on January 1, 1945, leased the ground floor of the hotel to Jerome J. O'Connor, individually, for a five-year term with an option to renew for an additional five years. Possession was taken by him under the lease and he operated it as the "Cobra Night Club."

The lease provided in part: ". . . and it is further agreed that the said parties of the first part shall not be called upon to make any improvements or repairs whatsoever upon the said premises or any part thereof, but the said party of the second part agrees to keep the same in good order and condition at his own expense."

Thereafter, several loans were obtained, in excess of $30,000, on the property and the proceeds of the loans were to be expended to improve the premises. Plaintiffs contend that all or part of these loans was expended to make necessary repairs to the building and that therefore, in an accounting, the amount of the loans should be the obligation of the partnership. Defendants contend that the proceeds of the loans were used entirely, or in a large part, to remodel the first floor and turn it into the "Cobra Night Club" and that these loans were the personal obligation of the plaintiffs.

Plaintiffs' version of the facts is that during World War II, the government and the city threatened to put the ground

level stores off limits and to condemn them unless improvements were made to bring the ground floor up to code standards; that thereafter these loans were obtained in the names of both the plaintiffs and the defendants and trust deeds securing them were recorded; that after the work was done, the notices of completion were signed by both plaintiffs and defendants and at least $10,000 of the proceeds of the loans were used to improve the entrance to, the stairway leading to, and the office of the hotel, as well as to place steel beams underneath second-story hotel premises.

Defendants' version of the facts is that after signing the lease, the plaintiffs desired to remodel the premises into the night club and obtained these loans to provide the funds necessary for these improvements; that plaintiffs made the loan payments out of their own funds and did not call upon the defendants to contribute towards the repayment of the loans until the dispute which culminated in this action arose between them. Defendants also point out that the loan funds were placed in the plaintiffs' own bank account and disbursed by them, and that the plaintiffs were the sole proprietors and operators of the club.

In rendering its oral decision, the trial judge stated: ''I think that the evidence establishes that the loans, although signed for by Mr. Skelton and his wife, were the personal responsibility of Mr. O'Connor and his wife. I base that conclusion upon three or four things that seem to me to be pertinent. In the first place, the provisions of the lease itself would indicate that the lessors were not to be responsible for improvements made on the property. Secondly, all the loans for which these improvements were made, the money went into the personal bank account of Mr. O'Connor and his wife. It was expended from the bank account, as far as the evidence discloses, at their complete discretion. So far as the evidence indicates, all of the money or at least a substantial portion of it was spent upon a part of the premises which was under lease and which would, I think it is fairly inferable, result in the businesses which Mr. O'Connor attempted to run to prosper and result in profits to him, and not to Mr. Skelton. The present existing loan has nothing to do with these improvements, and I believe I am correct in my recollection that it results from a purchase of the liquor license, and I conclude from that that the existing loan is also the sole responsibility of Mr. O'Connor and is his separate debt to be paid by him.''

 Plaintiffs' main contention on this appeal is that the provisions of the April 1, 1945, lease between plaintiffs and defendants do not preclude holding the defendants liable for capital improvements because these improvements were not contemplated at the time the lease was made and were only made necessary when the parties were called upon to improve the premises by the government and the city. Plaintiffs also contend that the fact that the proceeds of the loans were placed in their individual account does not preclude a finding that the loans were a partnership obligation because the loans were disbursed for improvements to the partnership property. Defendants argue that the provisions of the lease do preclude plaintiffs from holding defendants liable for the capital improvements. Defendants insist that the loans were used to create the club which was owned and operated by the plaintiffs and the partnership had no direct interest in the operation except as landlords and argue that the fact that the proceeds of the loans were put in plaintiffs' individual bank account shows that the loans were not an obligation of the partnership as between the parties.

It is indicated that the repairs amounted to over $19,000 and the loans obtained were placed in plaintiffs' bank account. Plaintiff Jerome O'Connor claims that he paid approximately $2,500 more than the amount of the loans from his own income to finish the remodeling.

Mr. Skelton testified that he did not join with defendants in making these repairs; that after the alterations were done, plaintiffs had use of the entire lower floor; that defendants never discussed with him the alterations to be made and he never authorized any of the expenditures made by plaintiffs.

O'Connor testified to the contrary and said that Skelton went over the blueprints for the improvements and approved them. Since findings were waived, we are guided mainly by the oral decision of the trial judge, which indicates that he believed the testimony of defendants and the evidence would justify a finding that all improvements were to be paid for by plaintiffs during the leasehold period; that none were expended for the benefit of the partnership nor for the improvement of the building and that the sums expended were for changing the building over to accommodate O'Connor's night club from which he received the revenue.

 Where findings are waived, it is presumed that every fact essential to the support of the judgment was proved and found by the court. (*Antonelle* v. *Board of New City Hall*

*Comrs.,* 92 Cal. 228 [28 P. 270]; *Gray* v. *Gray,* 185 Cal. 598 [197 P. 945]; 48 Cal.Jur.2d § 293, p. 294.)

The original judgment decreed that defendant First National Trust and Savings Bank of San Diego held a trust deed on the property for the principal sum of $17,000, with an unpaid balance of $5,159.30; that since the filing of the complaint, plaintiffs and defendants have established a trust and named trustees to receive rentals and pay maintenance expenses pending final result of this action; that $7,968.43 has been drawn therefrom for the sole purpose and benefit of plaintiffs and no benefit to defendants, and as a result plaintiffs owe defendants $3,984.21; that the trust deed obligation to the bank is entirely the obligation of plaintiffs and should be paid out of plaintiffs' share of the proceeds of sale of the property in partition; that an additional sum of $1,300 is due from plaintiffs to defendants as a result of an accounting; that a $950 fee due the referee appointed by the court be paid out of the trust fund and that the property be partitioned by sale and division of the proceeds. It was then ordered that defendants have judgment against plaintiffs for $5,284.21; that a referee be appointed to conduct the sale and report to the court; that all fees allowed be paid and that defendant be paid one-half of the remaining proceeds; and that there should be deducted from plaintiffs' share of the proceeds the unpaid balance of the bank loan.

On a motion for a new trial, the court found a claimed error in accounting in reference to the amount paid for a liquor license. The judgment was modified, showing that the portion of the original judgment awarding defendants $5,284.12 be vacated and in place of it that defendants have judgment against plaintiffs for $1,034.21. As thus amended, the motion for new trial was denied. Plaintiffs appeal from the judgment as amended.

The trial court appointed a referee or certified public accountant to audit the accounts and to report to the court. The report was received in evidence. The court made further investigations of the items submitted. Although the evidence is in conflict, there is sufficient to support the implied findings.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied April 12, 1962, and appellants' petition for a hearing by the Supreme Court was denied May 16, 1962.