THE STATE OF CONNECTICUT *vs.* THE UNITED ELECTRIC LIGHT AND WATER COMPANY.

THE STATE OF CONNECTICUT *vs.* THE FOUNTAIN WATER COMPANY.

First Judicial District, Hartford, March Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Chapter 292 of the Public Acts of 1915, Part 2, provides (§§ 11, 12) that every company whose "principal business" is manufacturing, selling and distributing gas or electricity to be used for light, heat or power, or operating water-works for domestic uses or power pur-

poses, shall pay an annual tax of one and one half per cent "upon gross earnings from operations in this State"; and that no deduction from such gross earnings shall be allowed except refunds due to errors or overcharges. In a suit to recover this tax it was *held:*—

1. That in computing gross earnings, all operations of the company in this State in whatever department or branch of its business—principal, subordinate, or incidental—were to be included; and that the reference to the company's "principal business" was not a limitation of the field of taxation, as the respective defendants contended, but was merely a convenient means or method of grouping or classifying the corporations which were to be affected by that part of the statute.

2. That "gross earnings," as thus used, meant the whole or the entire earnings, without deductions for operating expenses, local taxes or bad debts; and that this was especially clear in view of the express prohibition against deductions.

Argued March 9th—decided June 2d, 1916.

APPLICATIONS to determine the amount of the tax due from the respective defendants under the provisions of chapter 292 of the Public Acts of 1915, and for an order for its payment, brought to and reserved by the Superior Court in Hartford County, *Tuttle, J.,* upon demurrer to the answer in each case, for the advice of this court. *Judgment sustaining demurrers advised.*

The taxes in question were laid pursuant to Part II of chapter 292 of the Public Acts of 1915, p. 2132. The portions of the statute bearing upon the questions involved in the decision are printed in the footnote.

Sec. 11. Every company, the principal business of which is manufacturing, selling, and distributing gas or electricity to be used for light, heat, or motive power, or operating a system of water works for selling and distributing water for domestic or power purposes, shall pay an annual tax upon gross earnings from operations in this state. No deduction shall be allowed from such gross earnings for any commission, rebate, or other payment, except a refund resulting from an error or overcharge. . . .

Sec 12. Every company specified in section eleven shall be taxed upon the amount of gross earnings from operations at the rate of one and one-half per centum as hereinafter provided. Gross earnings, for the purpose of assessment and taxation, shall be as follows: In case of a

The State *v.* United Electric Light & Water Co.

The defendants are corporations of this State, the principal business of one being the manufacture, sale and distribution of electricity and gas to be used for light, heat or motive power, that of the other being the operation of a system of water-works for the sale and distribution of water for domestic purposes. The State board of equalization, pursuant to § 14 of the above statute, laid a tax upon each of these companies of one and one half per centum of the gross earnings from its operations as found by the board. Each corporation, claiming that the amount of its gross earnings from operations as found by the board of equalization is excessive, paid to the State the amount of its tax admitted by it to be due upon a proper finding of its gross earnings from operations. These amounts were received by the State as *pro tanto* payments.

These actions are applications by the Attorney-

company carrying on business entirely within this state, the amount of gross earnings from operations; in case of a company carrying on business, a part of which is outside of this state, such portion of the amount of gross earnings from operations determined under the provisions of section eleven as is represented by the ratio of the number of miles of water pipes, gas mains, or electric wires operated by such company within this state on the thirtieth day of June next preceding to the number of miles of water pipes, gas mains, or electric wires operated by such company on said date.

Sec. 14. The board of equalization, during the first ten days of November in each year, shall make a list of the companies designated in section eleven, with the amount of gross earnings from operations in this state for said year, as determined pursuant to the provisions of section twelve. . . .

Sec. 15. If the tax under the provisions of part two is not paid within ten days after the same shall become payable, the attorney-general in the name of the state shall apply to the Superior Court . . . for an order for payment of such tax. . . .

Sec. 16. The tax upon gross earnings as provided in part two shall be in lieu of all license, corporate excess, or income taxes payable to the state. The owner of any share of stock, bond, or other evidence of indebtedness of any corporation liable to the tax upon gross earnings as provided in part two shall be exempt from taxation thereon.

General, under § 15 of the statute, asking for an order for the payment of the taxes as laid. The defendants, in their answers, set up the payments made by them as a first partial defense. Another partial defense, contained in each answer, alleges that in § 1 of Part I of the statute "gross earnings" is defined as the "gross operating income as defined by the Interstate Commerce Commission of the United States in the case of railroads," and that the gross earnings from the operations of the defendants under this definition were much less than the amounts fixed by the board of equalization. Each defendant filed several other partial defenses, each of which alleges that a certain sum, therein mentioned and described to have been received by the corporation under circumstances which it claims do not constitute a "taxable operation," was, by the board of equalization, included in the amount of gross earnings as found by them. Other partial defenses allege that certain sums were paid out of the earnings of the defendants for taxes, and for electricity and water purchased from other companies, and that these were, but should not have been, included in the amounts of gross earnings found by the board. To each of the partial defenses except the first the plaintiff demurred, and the Superior Court, under stipulations of the parties, reserved the questions of law arising upon the pleadings for the advice of this court.

*George E. Hinman,* Attorney-General, *Charles E. Searls* and *Charles W. Cramer,* for the plaintiff.

*William F. Henney, George D. Watrous, Edward A. Harriman* and *William E. Thoms,* for the defendants.

THAYER, J. The questions reserved in each of the two cases whose captions appear above depend upon the

construction which is to be placed upon Part II of chapter 292 of the Public Acts of 1915. The cases have been argued together and this opinion will apply to both.

Chapter 292 of the Public Acts of 1915 lays a State tax upon various corporations and companies operating within the State. Part one relates to railroad and street-railway corporations; part two to certain water, gas, electric and power companies; part three to stock insurance corporations; and part four to miscellaneous corporations. The defendants are companies taxed under part two, which provides that such companies shall pay an annual tax of one and one half per centum on their gross earnings from operations in this State. As their operations are entirely within the State, the board of equalization in fixing the amount of the gross earnings of the defendants included therein the earnings from all their operations. The defendants say that only the earnings from those operations which constitute the "principal business" of each company should have been included in that amount; that as it is the principal business of the companies which subjects them to taxation, it is the earnings in those operations only which are taxable.

Section 11 designates or describes the companies which are to be taxed under part two, by reference to their "principal business." Companies whose principal business is not the manufacture of gas, electricity or power, or the operation of water-works, may, under the statutes or their charters, operate plants for these purposes in connection with their principal business, and may sell surplus power, water, gas or electricity to their neighbors. Such companies are not included in the class of companies taxed under part two, but in classes taxed under other provisions of the Act. The words "principal business" in § 11 designate the com-

panies and not the operations to be taxed. The statute says that these companies shall pay a tax upon their gross earnings from operations. The operations are not limited by the language to operations in the principal business. The natural purport of the language used is that they shall pay a tax upon their gross earnings from all their operations. It is inconsistent with the purpose of the statute that a company which manufactures and sells electricity to be used for light, heat or power as its principal business, and also manufactures and sells gas for similar uses, and operates a system of water-works for selling and distributing water for domestic and power purposes, should pay a tax only upon the earnings from operations of the principal business, and that a company whose sole business is to manufacture and sell electricity to be used for light, heat and power, or one which as its sole business manufactures gas to be sold and used for like purposes, shall pay a tax upon its entire earnings. Most of this class of companies are corporations organized under broad special charters, having the power to carry on, and in fact carrying on, not only the "principal business" which brings them within the class taxed under part two of the statute, but other business as well.

The clear intention of the legislature, from the language used, was that companies of the class designated should pay a tax measured by a percentage of the gross earnings from all their operations. This would have been no clearer had the words "from all sources" been inserted between the words "gross earnings" and "from operations in this State," as is done in part one, which refers to railroad and street-railway corporations.

The fact that in cases where a company carries on business a part of which is without this State, the statute, § 12, provides that gross earnings (i. e. gross

earnings from operations in this State), for purposes
of assessment and taxation, shall be such proportional
part of the entire earnings of the corporation as the
mileage of water pipes, gas mains, and electric wires,
operated by it in this State bears to its entire mileage,
offers, so far as we can see, no substantial basis for the
claim that only earnings from operations in the prin-
cipal business of the company are intended to be taxed.
The method of arriving at the gross earnings in such
cases is an arbitrary one, whether earnings from all
operations or only from those in the principal business
are referred to; but, so far as appears, the rule would be
as applicable to subordinate as to principal operations.
We hold, therefore, that by gross earnings from opera-
tions in this State was intended all operations in this
State, including incidental, subordinate and subsidiary
operations as well as principal operations.

If, therefore, the defendants are correct in their
claims that the sums received by the water company
for the sale of apples and hay grown upon its land, and
the sum received for the right to take ice from its pond
did not constitute earnings arising from operations in
its principal business, they were properly included in the
gross earnings of the company, for they were earnings
arising from operations of the company incidental to
its principal business. The same is true of the sums
received by the electric light and water company for
the sale of coke, tar and other residual products, and
from the sale of gas and electric appliances for heating,
cooking and lighting. These operations are so closely
connected with the principal business of the manufac-
ture and sale of gas and electricity, as to seem to be a
part of the principal business of the company. If not
so, they are clearly included in the taxable operations
of the company as incidental and subsidiary thereto.
The demurrers to the partial defenses which allege

that these were not taxable operations should, therefore, be sustained.

The demurrers to the remaining partial defenses raise the question whether the words "gross earnings," when used in part two of the statute, mean the entire earnings from all operations, or such earnings less operating expenses, taxes and bad debts. The result to the State would be very different under the latter construction than under the former. Under the latter, there will be no tax upon the companies and no revenue to the State if the companies make no profit from their operations, while under the former construction the State will receive a revenue from the corporations if there are earnings although no profits to the companies.

Section 16 provides that the tax in question shall be in lieu of all license, corporate excess, and income taxes payable to the State, and exempts the owner of any share of stock, bond, or other evidence of indebtedness of the company liable to tax under part two, from taxation thereon. Under the construction claimed by the defendants, the corporation would escape State taxation, and the holders of its securities would escape taxation thereon, if the company failed to make a profit. The purpose of part two manifestly was to raise revenue for the State by taxing these companies upon their franchises or business. The class of companies taxed necessarily operate under Special Acts permitting them to lay their pipes and string their wires in the streets and highways of the State. They are thus properly subject to a State tax upon the franchises and privileges thus granted them. Other companies and persons, above referred to, who may under the general laws manufacture for their own uses and sell to their neighbors gas and electricity, or operate private waterworks in a similar way, have no rights in the public streets for such purposes except upon their own land.

The class of companies referred to in part two being properly-'subject to such a tax, the amount thereof could properly be measured by the amount of its business, and resort had to the earnings to ascertain that amount. A moderate percentage of the gross earnings is as likely to be fair both to the State and to the companies as a larger percentage of the net income or profits. Had the legislature intended to measure the taxes in question by a percentage of the profits or net income from the companies' operations, we should have expected them to use language clearly expressing that intention. This they have not done. When we speak of the "gross earnings" of a person or corporation we mean the entire earnings or receipts of such person or corporation from the business or operations to which we refer. "The word 'earnings,' in its general acceptation, does not mean net earnings unless qualified in some way." *Smith* v. *Bates Machine Co.,* 182 Ill. 166, 169, 55 N. E. 69. Webster's New International Dictionary defines "gross" as "whole; entire; . . . opposed to *net.* Gross earnings . . .. are the entire earnings . . . without any deduction for expenses incurred." This last is doubtless the sense in which the words are ordinarily used.

But § 11 of part two not only uses the words "gross earnings from operations", but says specifically that no deductions shall be made from such gross earnings except refunds arising from errors or overcharges. The language used not only does not show an intent that the tax shall be based upon the net earnings of the companies taxed, but shows a clear intent to base it upon their entire income from all their operations. This being so, it is unnecessary to inquire whether the words gross earnings are so defined in part one of the statute as to refer to net earnings only. Part two is entirely distinct from part one, and its meaning too

clear to call for reference to other parts of the statute to aid in its interpretation.

The amounts paid for electric current, gas and water purchased from other companies by the defendants stood in place of operating expenses and interest on investment to produce the same had the defendants manufactured and produced the electricity, gas and water purchased. These, and the cost of coal and other raw material purchased, and the local taxes paid, were proper matters for deduction had the net earnings been the basis of taxation, but were not proper deductions to be made in determining the gross earnings. The demurrers to these defenses should therefore be sustained.

The Superior Court is advised that each of the demurrers should be sustained.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.