[Civ. No. 4518. Third Appellate District.—September 8, 1932.]

MILTON C. GORDON, Appellant, v. J. E. MOUNT, Respondent.

Norris J. Burke, Fred B. Wood and Lucas E. Kilkenny for Appellant.

Berry & Watson and J. E. Mount, *in pro. per.*, for Respondent.

PLUMMER, J.—In this action the plaintiff sought judgment against the defendant for and on account of a certain alleged malicious prosecution. Judgment went for the defendant. The cause was tried before the court sitting without a jury. Findings were waived. From the judgment of the court the plaintiff appeals.

The alleged malicious prosecution consisted of the filing of a complaint by the defendant, charging the plaintiff with the theft of a number of cattle. Complaint dismissed upon motion of district attorney.

The record shows that litigation has been pending between the defendant and the James J. Stevinson Corporation, of which the plaintiff in this action is the superintendent, for over twenty years. At the time of the occurrences mentioned in this action George Hatfield was the manager of both the James J. Stevinson Corporation and the Eastside Canal and Irrigation Company, and was the immediate superior of the plaintiff in this action.

While the various phases of the litigation between the parties herein are set out in the transcript, only that which pertains to this action need be considered.

In one of the actions the title of the Eastside Canal and Irrigation Company to an easement to a certain ditch commonly known as the "Turner Slough", was quieted. This slough ran through the east half of lot 24, in section 26, township 7 south, range 10 east, M. D. B. & M., being property belonging to the defendant.

On or about the tenth day of April, 1928, the plaintiff herein was engaged in cleaning out said Turner Slough, where it ran over and through the land belonging to the defendant, and on that date the plaintiff took up as estrays six head of cattle, where they were then grazing on the east half of lot 17, section 16, township 7 south, range 10 east, M. D. B. & M., being property belonging to the James J. Stevinson Corporation.

It appears from the record that two days prior to the taking up of the cattle a notice had been served upon the defendant to keep his cattle off the described premises. After the taking up of the cattle by the plaintiff, proceedings were had under the provisions of the statute relating to estrays, and thereafter it appears that a suit for the recovery of the cattle was prosecuted by the defendant, and one Woolman who claimed to be the owner of some cattle theretofore left in the possession of the defendant Mount, and taken up as estrays by the plaintiff Gordon. This action resulted in a judgment directing the return of the cattle upon payment of the sum of $85, cost of the proceeding. This sum being paid, the plaintiff proceeded to return the cattle claimed to have been taken up by him as estrays, save and except as to one that had died during the pendency of the action just referred to. It also appears that there were two or three calves also returned with the cows that had been taken up.

The controversy which led to the filing of the criminal complaint by Mount arose out of the contention on the part of the defendant in this action that the cattle returned were not the same as those that had been taken up. The cattle were taken up as estrays, as heretofore stated, on or about the tenth day of April, 1928, and returned to the defendant by the middle of July, 1929. The cattle were returned by placing them in a public highway opposite the residence occupied and belonging to the defendant Mount. The claim on the part of the plaintiff is that the identical cattle, with their issue, were returned, save and except as to the one head that had died. The testimony on the part of the plaintiff was to the effect that one of the cattle taken up was missed on or about two months after being taken up, that the country was searched, and said animal could not be found. The testimony on the part of the defendant was to the effect that they could not identify the cattle returned, as the ones taken up, save and except as to one of them.

We do not need to follow the testimony set out in the transcript, relative to the identity of the cattle returned as being what was left of the cattle that had been taken up as estrays by the plaintiff, and will content ourselves with saying that it largely preponderates in favor of the contention of the plaintiff that of the six cattle taken up as

estrays, all of them were returned with their issue, save and except as to one which the court found, in the claim and delivery proceeding, had disappeared from the possession of the James J. Stevinson Corporation without any fault on the part of the corporation and without any fault on the part of the plaintiff in this action.

During the introduction of testimony relative to the taking up of the cattle and the place where they were grazing at the time of the taking up, the court, over the objection of the plaintiff, allowed the defendant to introduce testimony to the effect that defendant had had an agreement with A. J. Stevinson, an employee of the Stevinson Corporation, relative to an exchange of pastures, and that the cattle were where they had a right to be at the time they were taken up as estrays. Also, there was other testimony introduced over the objection of the plaintiff that the wires inclosing the field in which the cattle had been, had been cut by employees of the Stevinson Corporation, and the cattle escaped therefrom. While this testimony does not appear to be material to any of the issues involved in this action, and the objection of the plaintiff to its introduction should have been sustained by reason of what we shall hereafter say, it is unnecessary to follow the rather extensive argument of counsel for the appellant relative to the authority of A. J. Stevinson to bind the corporation by any such agreement, even though made by him.

Three grounds of defense, though not specifically set out in the answer, appear to be tendered by the testimony, to wit: Probable cause; advice of counsel; lack of malice. The record shows, as we have summarized, that the cattle in question were taken up as estrays, a judgment of the court finding that the cattle were lawfully taken up and directed to be returned upon payment of costs, that the costs were paid, and the testimony largely preponderating in favor of the contention that the same cattle taken up as estrays were returned, together with their issue, save and except as to the one missing animal, it is evident that no probable cause existed for the filing of a criminal complaint charging theft of the cattle. The findings in the case having been waived, and there being nothing in the evidence which would warrant a finding that the defendant had probable cause for the filing of a criminal complaint, it must be

presumed that the court did not base its judgment upon the alleged existence of probable cause.

The second ground of defense is that of advice of counsel. To sustain the defense the law is well established that anyone relying thereon must show that he made a full and complete statement of all the facts within his knowledge bearing upon the transaction. This can only be done by the testimony showing what facts were stated by the defendant to the counsel consulted by him. It is not sufficient simply for· the defendant to say in substance—"I stated to counsel all the facts within my knowledge concerning the transaction." Such testimony is only the conclusion of the witness. It appears that the defendant consulted the district attorney of Merced County, who advised him that he would not issue a complaint. The defendant also consulted the attorney who had represented him in a civil action, and was advised by him that he could do no more in the cause. The defendant then consulted counsel in the city of Stockton and obtained a complaint from them which he subsequently filed with a justice of the peace in Merced County, who issued a criminal complaint thereon.

The defense of advice of counsel is based upon the action of his Stockton attorneys. All the testimony relative to the statement of facts is really summarized in a few questions which are as follows (taken from the testimony of the defendant): "Q. Now, in consulting your attorneys in Stockton, did you tell them all the facts within your knowledge pertaining to the case? Mr. Burke: We object to that as calling for a conclusion of the witness. The Court: Overruled. Mr. Watson: Q. Did you relate to them, all of the facts to which you have testified? Mr. Kilkenny: We object to the question in that form, as leading and suggestive, and calling for the conclusion of the witness. The Court: Well, it is leading. Change the form of the question. Mr. Watson: Q. Did you, or did you not, tell your attorneys, on that occasion, to which you have testified, before the complaint was filed, relate to them all of the facts to which you have testified in this case? A. Yes, sir, the same." There is no testimony that the defendant testified as to what he told his attorneys. He merely stated, over plaintiff's objection, that he told them all the facts of the case to which he had testified in the proceeding then being

had before the court. It is almost unnecessary to cite authorities to show that this testimony is insufficient to support the defense of advice of counsel. However, we will cite an excerpt from the testimony set out in the case of *Lansky* v. *Pettyman*, 140 Mich. 40 [103 N. W. 538, 540], which is strikingly similar: "Q. Did you state all the facts that you knew in relation to this case both for and against Mr. Lansky and Van Kaul? A. I gave him the facts that I knew. Q. Did you give him all the facts you knew? A. I certainly did. I told him everything I knew about the case from the beginning." The court held that plaintiff's objection to such testimony should have been sustained. That the defendant must, by his testimony in court, set forth all the facts that he stated to his counsel in making an alleged full and fair disclosure is supported by all the authorities. We simply cite 19 Am. & Eng. Ency. of Law, 2d ed., p. 387 (cases cited in note 5) ; *Beadle* v. *Harrison*, 58 Mont. 606 [194 Pac. 134] ; *Murphy* v. *Davids*, 181 Cal. 706 [186 Pac. 143]. The list of authorities supporting what we have said is too long for further citation. It must therefore be held that the defense of advice of counsel is not supported by the testimony in this cause.

There remains for our consideration the question of malice upon which question there was no testimony in addition to what inferences might be drawn from lack of probable cause and lack of advice of counsel other than the following: Justice McConnell, the justice of the peace before whom the complaint was filed, testified that the defendant said: "I want to get even with the Stevinson Corporation." On the part of the defendant Mount the testimony is as follows: "Q. On the date the complaint was filed, what conversation was had between you and Judge McConnell? A. I just gave him the complaint and he filed it. I don't think there was much of a conversation then. I don't remember that conversation. Q. Did you say to him that you were going to get even with the Stevinson Corporation? A. No sir, I did not."

Upon the subject of malice, we find the following in 16 California Jurisprudence, page 746: "It is incumbent upon the plaintiff, in an action for malicious prosecution, to prove malice. The existence of malice may be inferred by the jury from acts or declarations of the defendant expressing

or indicating prejudice, ill-will or malicious motive in the matter of the prosecution. And while malice is not presumed to exist from want of probable cause as a matter of law, it may be inferred therefrom by the jury. But in whatever way malice may be proved, it must be proved as a fact." And on page 735 of the same volume, we find the following text, which we think is fully borne out by the cases cited in the footnotes: "It is not sufficient, in an action for malicious prosecution to show that the proceedings complained of were prosecuted without proper ground, or even without what in law constitutes probable cause. Malice, that is, actual malice on the part of the prosecutor, is a necessary element in the cause of action. It is abundantly settled that no suit may be maintained against an unsuccessful plaintiff or prosecutor, unless it is shown affirmatively that he was actuated in his conduct by malice—some improper or sinister motive. Malice is essential to the maintenance of such action and not merely to the recovery of exemplary damages. There is no distinction in this respect between actions for actual damages and those for exemplary damages, or between actions for instituting civil and those for instituting criminal proceedings." ▇ The burden of proving both malice and want of probable cause is on the plaintiff. (*Runo* v. *Williams*, 162 Cal. 444 [122 Pac. 1082]; *Lee* v. *Levinson*, 173 Cal. 166 [159 Pac. 438]; *Burke* v. *Watts*, 188 Cal. 118 [204 Pac. 578]; *Carpenter* v. *Ashley*, 15 Cal. App. 461 [115 Pac. 268]; *Foster* v. *Banks*, 112 Cal. App. 622 [297 Pac. 106].) Further: In order to sustain an action for malicious prosecution, malice and want of probable cause must occur. If either be wanting, the action must fail. The authorities supporting this statement of the law are so numerous that we cite only a recent decision, to wit: *Pickering* v. *Havens*, 70 Cal. App. 381 [233 Pac. 346].

While the jury or the trial court sitting without a jury may properly infer malice from want of probable cause, they are not required to do so as a matter of law. It therefore follows that we cannot state as a matter of law that the evidence in this case establishes the charge of malice. ▇ Where findings are waived it is presumed that every fact essential to the support of the judgment was proved

and found by the court. (*Gray* v. *Gray*, 185 Cal. 598 [197 Pac. 945] ; 24 Cal. Jur., p. 956, and the cases there cited.)

In support of the judgment, there being no findings in this case, we must hold that the court, notwithstanding the record shows want of probable cause and lack of reliance upon advice of counsel that the testimony introduced in the cause did not justify the charge of malice, and the existence of malice being a question of fact, we are bound by the judgment of the trial court.

The judgment is affirmed.

Preston, P. J., and Thompson (R. L.), J., concurred.