# Richmond

PENINSULA TRANSIT CORPORATION V. COMMONWEALTH.

January 16, 1936.

Present, All the Justices.

The opinion states the case.

*Lett, Murray & Ford,* for the appellant.

*Abram P. Staples, Attorney-General,* and *W. W. Martin, Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

This is an appeal from an order of the State Corporation Commission sustaining its former order of assessment of taxes against appellant in regard to certain tolls paid bridge and ferry companies under authority of an act of the General Assembly, approved March 26, 1932.

Honorable Thomas W. Ozlin, Chairman of the Corporation Commission, in an able and exhaustive opinion filed with the record, has so clearly and satisfactorily presented the law and the facts of the case that we adopt the same as the opinion of the court.

The opinion is as follows:

"On November 20, 1934, Peninsula Transit Corporation filed its petition, asking the State Corporation Commission to review and correct what it alleged to be an erroneous assessment of taxes upon certain tolls paid bridge and ferry companies, which taxes were assessed by the State Corporation Commission, under authority of an act approved March 26, 1932, Acts of General Assembly, page 707, *et seq.* [chapter 360].

"The petitioner alleged that it was a carrier of passengers in the tidewater section of Virginia, on the north and south sides of the James river, over routes which crossed certain bridges and ferries located wholly within the State of Virginia, and also the ferry at Colonial Beach, Virginia, across the Potomac river. The total amount of tolls alleged to have been paid said bridge and ferry companies is $26,204.02, and the 2 per cent tax assessed under the provisions of said act of the General Assembly amounts to a sum of $524.08, and this is the amount which is in controversy. Petitioner paid this sum of $524.08 into the treasury of the State of Virginia, the payment being made under protest. The Commission is, therefore, asked to review, correct, and cancel the said tax, and order its refund to petitioner.

"The petition sets forth four separate grounds upon which it seeks a review and correction of said assessment, as follows:

" '*First:* Because the charge imposed is upon vehicle carriers operating over the public highways of the State and it is declared by section 8 of the Act to be compensatory and as a just and reasonable contribution to the costs of constructing, reconstructing, maintaining and policing such highways incident to the use thereof by such motor

vehicle carriers, and the fees and charges imposed by the Act are segregated for exclusive use upon the highway and the traffic thereon, and, therefore, the receipts intended by the Act should be limited to such as are derived by motor vehicles in the use of such State highways.

" '*Second:* The tolls collected from passengers and paid over to ferry companies are so received and paid, not for transportation by this applicant in its operation, but for transportation by the ferry companies which alone perform that service upon the water.

" '*Third:* It was not intended by the Act to impose the tax against the ferry company upon its gross transportation receipts for carrying passengers over the water spaces intervening in the State highway, and, at the same time, impose the like tax upon your petitioner for the same toll collected by it upon the same passengers and paid to the ferry companies. This double taxation was not intended.

" '*Fourth:* That the statute and the words "gross transportation receipts," as interpreted and applied by the courts of this country, do not include tolls collected from passengers and paid over to ferry and bridge companies not forming part of the public highways of the State and should not be interpreted and applied against this applicant.'

"The pertinent facts are that the petitioner, in conducting its operations, uses several ferries and the bridges of the James River Bridge Corporation. The ferries and bridges used are as follows:

"Colonial Beach Ferry—This ferry operates from Colonial Beach, Virginia, across the Potomac river to the State of Maryland. This ferry is owned by an individual, and, of course, the State imposes no tax on the gross receipts derived from the operation of the ferry.

"Yorktown Ferry—This ferry operates from Yorktown across the York river to Gloucester Point. It is likewise owned by an individual, and the State imposes no tax on the gross receipts derived from the operation.

"Chesapeake Ferry—This ferry operates from Newport News to Pine Beach, Virginia, and is owned by the Chesapeake Ferry Company, and the State imposes a tax on its gross receipts. The charge per passenger across this ferry is 15c.

"Norfolk-Portsmouth Ferry—This ferry runs from the city of Norfolk to the city of Portsmouth. It is owned by the county of Norfolk and the city of Portsmouth, and no gross receipts or other tax is levied or collected by the State of Virginia. The charge per passenger across this ferry is 5c.

"James River Bridge Corporation—This corporation operates three bridges, one across James river, and the other two across rivers or creeks between Benns Church and Portsmouth. The property of this corporation is assessed entirely to the counties on each side of the streams crossed. The charge to the bus company per passenger on all three, or any one, of these bridges, is 20c. The petitioner gets a reduction per passenger on all the ferries and bridges under what is paid by an individual, due to the frequent trips. The ferry and bridge tolls are not paid daily, but either monthly or semi-monthly, a record of the number of passengers on each bus being kept by the ferries and by the toll-keeper of the bridges.

"The purchaser of a ticket for transportation on a bus crossing any of the ferries or bridges, is not advised that any portion of the price of the ticket is for bridge or ferry tolls. The passenger is simply charged a certain amount for the trip, and there is nothing on the ticket or elsewhere to indicate to the passenger that any portion of the price paid is for bridge or ferry tolls, except that the ticket has printed on it the words, 'subject to tariff regulations.'

"The petitioner absorbs the bridge and ferry tolls where it is advisable or necessary to meet competition. In other words, its rates or tolls are less in some instances than the rates or tolls of competing lines, which do not have

to pay the bridge or ferry tolls. Record, page 24, Witness Raymond testified:

" 'Q. Then to sum it up, Mr. Raymond, in making your charges where necessary on account of competition, you do not add anything for the tolls, and where you can do it, and there is not competition, you do it?

" 'A. The basic tariff where the toll bridge is involved is intended to be higher, but where there is competition, we cannot handle passengers, for instance, between Richmond and Norfolk, to add that toll charge, therefore, we have to reduce our fare and that is a situation we cannot help.'

"The fare from Richmond to Portsmouth is $1.95, and from Richmond to Norfolk it is likewise $1.95, although to get from Portsmouth to Norfolk the ferry is crossed, with a toll charge of 5c per passenger. Also, passengers from Richmond to Norfolk have the choice of three alternate routes, the fare being the same on all three routes, though the toll charges are not the same on all three. Passengers from Richmond to Norfolk can go: (a) direct to Newport News, then across the Chesapeake Ferry to Pine Beach, where the ferry toll charge is 15c; or (b) from Richmond *via* Petersburg, Benns Church, and Portsmouth, where the bridge tolls are 20c, plus the Norfolk-Portsmouth ferry charge of 5c, or a total bridge and ferry toll of 25c; or (c) from Richmond over the Williamsburg highway to the James river bridge, and thence across the three bridges of the James River Bridge Corporation into Portsmouth, across the Norfolk-Portsmouth ferry, where the combined bridge and ferry tolls are 25c.

"The Greyhound Line, which also operates between Richmond and Norfolk, *via* Petersburg, Suffolk, and Portsmouth, has a fare of $2.00, and no ferry tolls are paid, except the 5c per passenger ferry toll between Norfolk and Portsmouth; also, many other bus companies, paying bridge and ferry tolls in this State, have not deducted or sought to deduct such tolls from their gross transportation receipts; one or two of them had been

doing so, until their attention was called to it, when they discontinued the practice, and reported and paid the tax on those which had been previously deducted.

"In addition to the ferry and bridge tolls charged for passengers, there is likewise a charge for the bus itself. This charge for the bus, the petitioner admits it to be and treats it as an operating expense, but claims that the tolls paid for passengers on the bus should be deducted from the gross receipts.

"The grounds for relief asserted by the petitioner may be summarized:

"(1) That the receipts intended to be taxed are only such as are received through use of the highways, and the tax is imposed to compensate the State for such use.

"(2) That the amount paid to the bridge and ferry companies is paid, not for any services rendered to passengers by such carriers, but for services rendered to them by the bridge and ferry companies.

"(3) That such tolls so collected and paid over are no part of the gross transportation receipts of such carriers.

"(4) That it amounts to double taxation to impose the tax on the carriers collecting and paying over the tolls, and also impose a gross receipts tax on the bridge and ferry companies receiving the tolls.

"Taking up the first ground, it is pertinent to note that the language of section 8, referred to and relied upon by the petitioner, is much broader in its import and implications than as claimed by the petitioner. The pertinent part of that section reads:

" 'The charges imposed by this act upon motor vehicle carriers of passengers and property operating over the public highways of this State, are imposed for the purpose of defraying the *cost of administering the laws regulating the operation of such motor vehicle carriers* in this State, and as a just and reasonable contribution to the cost of constructing, reconstructing, maintaining and policing such highways incident to the use thereof by such motor vehicle carriers.'

■ "It will thus be seen that there are two distinct reasons stated in the section for the imposition of the charge: (a) Defraying the cost of administering the laws regulating the operation of such motor vehicle carriers; and (b) as a just and reasonable contribution to the cost of constructing, reconstructing, maintaining and policing such highways, etc. Of course, under both reasons, the charges are still compensatory, but they are not limited to the cost of constructing, reconstructing, maintaining, etc., but also for the cost of administering the laws regulating the operation of such motor vehicle carriers. The laws have to be administered as much when such motor vehicle carriers are on bridges and ferries, as when they are on any of the highways of the State. Such carriers must observe the rules and regulations prescribed by the Commission, and all applicable laws of the State, as well on such bridges and ferries, as elsewhere. Section 8, therefore, should not be given the narrow construction contended for by the petitioner. We think that this contention, even if sound, has little bearing on the determination of the question here involved.

"Grounds 2 and 3 really involve the same propositions, and may be considered together. This leads us to an examination of the language of the statute imposing the tax, which is found in chapter 360, Acts of 1932, page 707. The tax in question is imposed under section 6 of that chapter, found on page 710. Sub-section (b) of section 6 contains the applicable provision of the statute, the pertinent part of which reads:

" 'Motor vehicle carriers of passengers operating * * * in this State shall pay quarterly to the State Treasurer, on or before the fifteenth day of April, July, October, and January of each year * * * road tax, which shall be computed at the rate of two per centum of the total gross transportation receipts of such carriers.'

■ "The language 'total gross transportation receipts' is broad and comprehensive language, and there is no exception of any nature whatsoever in the statute. If it

had been intended that motor vehicle carriers could deduct from their gross transportation receipts the tolls paid to bridge and ferry companies, it would have been easy and pertinent to except such receipts. In reality, there is very little difference between the amounts paid for ferry and bridge tolls, and the amounts paid as commissions to agents selling tickets, for expenses in keeping the vehicles in repair, for the cost of gasoline and oil, or for any other operating expense. It is well settled that such ordinary and usual operating expenses cannot be deducted before reporting for taxation gross transportation receipts, but that such expenses are a part of the gross transportation receipts. No case has been found construing gross transportation receipts to be what is left after the paying of operating expenses. Such a construction would be destructive of the very term 'gross transportation receipts,' and would pervert the language of the statute to mean net transportation receipts.

"The petitioner pays a toll on all the ferries and bridges crossed by it on its buses, as distinguished from the passengers, and there is no contention that such tolls should be deducted before reporting gross transportation receipts. It is difficult to perceive where there is any real distinction between tolls paid for the buses and tolls paid for passengers on the buses.

"The case of *State of Connecticut* v. *United Electric Light & Water Co.*, 90 Conn. 452, 97 Atl. 857, is a case in point. There the court was construing a tax statute essentially similar to our own statute. The court in that case considers what is meant by the term 'gross earnings,' which seems to have the same meaning in the statute as our term 'gross receipts.' The court uses this language, 90 Conn. 452, on page 460, 97 Atl. 857:

" 'When we speak of the "gross earnings" of a person or corporation, we mean the entire earnings or receipts of such person or corporation from the business or operations to which we refer. The word "earnings" in its general acceptation does not mean net earnings, unless quali-

fied in some way. *Smith* v. *Bates Machine Co.*, 182 Ill. 166, 169, 55 N. E. 69. Webster's New International Dictionary defines "gross" as "whole; entire; * * * opposed to *net*. Gross earnings * * * are the entire earnings * * * without any deduction for expenses incurred." This last is doubtless the sense in which the words are ordinarily used * * *.

" 'The amounts paid for electric current, gas, and water purchased from other companies by the defendants stood in place of operating expenses and interest on investment to produce the same, had the defendants manufactured and produced the electricity, gas, and water purchased. These, and the cost of coal and other raw material purchased, and the local taxes paid, were proper matters for deduction had the net earnings been the basis of taxation, but were not proper deductions to be made in determining the gross earnings.'

"*State* v. *Illinois Cent. R. Co.*, 246 Ill. 188, 92 N. E. 814. This is a lengthy and well considered case, and we shall content ourselves with quoting one syllabus paragraph and a short extract from the opinion. The fourth syllabus paragraph reads:

" 'Illinois Central Railroad Charter (Priv. Laws 1851, page 72) section 22, provides that it shall pay the State an amount equal to at least 7 per cent of the gross receipts of the corporation in lieu of other taxes. Held, that the word "gross" meant the entire amount, the total sum, without any deduction of any kind, and therefore included receipts derived from the charter lines for transporting interstate commerce.'

"In the opinion the court said as follows:

" 'In *Commonwealth* v. *United States Express Co.*, 157 Pa. 579, 27 Atl. 396, the court held that a tax on gross receipts meant a tax upon the total receipts, and not upon the net earnings or the gross earnings of the express company's business, less the amount paid to other companies for transportation services. In *German Alliance Ins. Co.* v. *Van Cleave*, 191 Ill. 410, 61 N. E. 94, this court held that

it appeared to be the intention under a certain law to levy a tax on the "gross income" of foreign fire insurance companies, and that this required such companies to pay a tax "on the gross receipts of their business." See also, *Goldsmith* v. *A. & S. R. Co.*, 62 Ga. 468; *Dardanelle & R. Ry. Co.* v. *Shinn*, 52 Ark. 93, 12 S. W. 183; *Appeal of Roberts*, 92 Pa. 407; *Philadelphia & Reading R. Co.* v. *Commonwealth*, 104 Pa. 80; *People* v. *Morgan*, 114 App. Div. 266, 99 N. Y. S. 711; *Remington* v. *Field*, 16 R. I. 509, 17 Atl. 551.

" 'In *Union Pacific Railroad Co.* v. *United States*, 99 U. S. 402, 25 L. Ed. 274, the court had under consideration the question as to what were the net earnings for 5 per cent of which the company became liable to account, and held that they embraced "all the earnings and income derived by the company from the railroad proper and all the appendages and appurtenances thereof, including its ferry and bridge at Omaha, its cars, and all its property and apparatus legitimately connected with its railroad." The opinion also held that compensation accruing to the railroad company for services performed for the United States government should be taken into account in measuring the net earnings, notwithstanding the fact that the government did not pay such compensation directly to the railroad, but applied it, under the provisions of the charter, to the payment of subsidy bonds. In *State* v. *Minnesota & I. Ry. Co.*, 106 Minn. 176, 118 N. W. 679, 1007 (16 Ann. Cas. 426), it was held that the pay for the switching of cars for a lumber company, for the use of steam shovels, work trains, and other equipment, and the amount received for the use of its cars by other companies in excess of the amount paid out by it for the use of cars of said other companies, were all parts of the gross earnings.'

"*Pacific Gas & Electric Co.* v. *Roberts*, 176 Cal. 183, 167 P. 845, 846:

" 'The words "gross receipts from operation," as used in Const. art. 13, sec. 14, subd. "a", providing a tax upon

such receipts of public corporations, mean the entire operative income without deductions of any sort and do not contemplate a tax upon the gross profits.'

"The case of *Commonwealth* v. *United States Express Co.*, 157 Pa. 579, 27 Atl. 396, is more nearly in point than any case which has been brought to our attention. It answers, and we think disposes of, the three latter grounds for relief relied upon by the petitioner, and we quote from it somewhat at length:

" 'The case was tried without a jury under the act of 1874. The court found the facts as follows:

" ' "1. The gross receipts of defendant from its express business, transacted wholly within the State of Pennsylvania, during the period included in the settlement appealed from, amounted in the aggregate to $437,657.81. During the same period it paid to several railroad companies for 'express transportation' the sum of ————.

" ' "2. Some of the railroad companies were paid 'a fixed sum per annum for all express facilities' furnished to defendant by them; others were paid 'a fixed rate per hundred pounds of express matter carried'; and others were paid an amount equal to an agreed percentage of the gross receipts of defendant from its express business done on the given road.

" ' "3. All the railroad companies which carried express matter for defendant, and were paid therefor, as stated in the preceding finding, have paid all the taxes which accrued in respect of all their gross receipts, including the amounts received from defendants, as above stated.

" ' "On these facts defendant claims that it is liable only for the amount of its gross receipts, which accrued during the year included in the settlement, remaining after deducting from its total gross receipts the amount paid to the several railroad companies, as above stated, for the reasons set forth in the following specifications of objections to the settlement appealed from:

" ' "1. The said settlement for the said years, and each period thereof, is erroneous, for the reason that the tax

is assessed upon the total gross receipts within the State of Pennsylvania, without regard to the fact, contained in the reports of the company, of payment of a portion of said receipts to various railroad companies for transportation of the business upon which such gross receipts were collected, * * *.

" ' "2. The said settlement is further erroneous, for the reason that double taxes are received by the commonwealth upon that portion of the said gross receipts paid out for transportation, as set out in the first ground of objection.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

■ ■ " ' "The subject of double taxation has recently been considered by each of the members of this court in opinions which will be found in a note to *Commonwealth* v. *Westinghouse Air Brake Co.,* 151 Pa. 276, 281, 24 Atl. 1111, 1113, and it is not necessary to repeat what is there said. It is shown by the authorities there cited that the double taxation forbidden by a constitution requiring equality or uniformity of taxation is such as would require the same person or the same subject of taxation to contribute twice to the same burden, while other subjects of taxation belonging to the same class are required to contribute but once. And it was held in *Commonwealth* v. *Tioga Railroad Co.,* 145 Pa. 38, 22 Atl. 212, adopting the opinion of this court by Judge McPherson, that where a railroad company had paid the tax on all its gross receipts, including the amount paid by it to the defendant in that case for the use of its railroad, all the gross receipts of defendant, not deducting the amount received by it from the former company, were taxable, and that this was not double taxation; because both taxes were not levied upon the same subject nor to be paid by the same person. (The receipts of one company were paid to it for transportation, the receipts of the other were paid to it for tolls and trackage). In this case the sums paid by defendant to the several railroad companies, and which formed part of the gross receipts of these com-

panies, were paid for the services rendered by them in transporting express matter for. defendant; all defendant's gross receipts were received for the services rendered by it to its customers in receiving express matter and delivering it to the persons to whom it was consigned." '

"On that finding of facts by the lower court, the Supreme Court of Pennsylvania, in the opinion by Mr. Chief Justice Sterrett, says:

" 'An examination of the record in this case has fully convinced us that there is nothing, either in the learned trial judge's findings of fact or in the legal conclusion drawn therefrom, of which the defendant has any just reason to complain.

" 'The company's gross receipts from its express business, transacted wholly within the State, during the period included in the settlement appealed from, appear to have aggregated $437,657.81. During same period, considerable sums were paid by it to railroad companies for transporting its express matter. Some of said companies were paid a fixed sum per annum for all transportation service. Others were paid a fixed rate per hundred pounds of express matter carried for defendant, and others were paid a sum equal to an agreed percentage of defendant's gross receipts from its express business done on their respective roads. All the railroad companies that carried express goods for defendant, and were compensated for that service in one or other of the modes mentioned, have paid all the taxes which accrued in respect of their own individual gross earnings, including the amounts paid them respectively by defendant company. On these undisputed facts, the company defendant contends that it is taxable only on so much of its gross receipts as remains after deducting therefrom the amounts paid as aforesaid to other companies for transportation services. If the acts of June 7, 1879, and June 1, 1889, under which the tax in controversy is claimed, contemplated a tax on net receipts, this contention should prevail; but they do not. On the con-

trary they expressly declare "that * * * every express company * * * incorporated or unincorporated, doing business in this commonwealth * * * shall pay to the State Treasurer a tax of eight mills upon the dollar upon the gross receipts of said company received from express business done wholly within this State." The tax is thus laid not upon net earnings or upon gross earnings less the amount paid other companies for transportation services, but upon the entire gross receipts of the defendant's express business done wholly within this commonwealth. As construed in *Philadelphia & Reading R. Co.* v. *Commonwealth,* 104 Pa. [80] 82 [86], the term "gross receipts" has been regarded as equivalent to "gross increase" or "gross earnings." The defendant might, with almost equal propriety, claim the right to deduct office expenses and cost of local delivery service.

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*

" 'The court was also right in holding that, under the facts in the case, the taxation of the whole of said gross receipts is not illegal double taxation.

" 'We find nothing in either of the specifications of error that calls for reversal or modification of the judgment.

" 'Judgment affirmed.'

"The conclusion of the Commission is that the tax was properly imposed on the amounts paid the bridge and ferry companies, and that the petition for a review, correction, and refund of said tax should be dismissed."

*Affirmed.*