[Sac. No. 5508. In Bank. Nov. 2, 1942.]

BEKINS VAN LINES, INC. (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Respondent.

Harry A. Encell for Appellant.

Harry H. McElroy and George B. Campbell, as Amici Curiae, on behalf of Appellant.

Earl Warren, Attorney General, H. H. Linney, Assistant Attorney General, and R. L. Chamberlain and Adrian A. Kragen, Deputies Attorney General, for Respondent.

THE COURT.—This is an appeal from the judgment in favor of the defendant. After the trial judge had or-

dered the judgment, findings of fact and conclusions of law were waived by written stipulation of counsel. On this state of the record every intendment is in favor of the judgment, and it is presumed that every fact essential to the support of the judgment was proved and found by the court. (*Gray* v. *Gray,* 185 Cal. 598 [197 P. 945]; *Miller* v. *Pacific Freight Lines,* 40 Cal.App.2d 451 [104 P.2d 1069]; *Gordon* v. *Mount,* 125 Cal.App. 701 [13 P.2d 932]; 24 Cal.Jur. p. 956, and cases there cited.) The applicable rule requires the assumption that the proof showed and that the court found and concluded that the services out of which the disputed tax arose were so much a part of the business of the plaintiff, were so customarily rendered in that connection, and so directly contributed to the transportation which was the plaintiff's principal business, that money derived therefrom must be regarded as part of the "gross receipts from operations of said operator" and taxable as such.

On the original hearing it was assumed that the trial court had in effect so found and the appeal was considered in the light of that assumption. A reconsideration of the questions involved has persuaded us that the opinion on the former hearing correctly and adequately disposed of the appeal. That opinion is therefore adopted as the opinion of the court on rehearing. It is as follows:

The plaintiff sued to recover additional taxes assessed for the years 1935 and 1936 under the provisions of the California Motor Vehicle Transportation License Tax Act (Stats. 1933, p. 928, as amended, Stats. 1935, p. 2176; Deering's Gen. Laws, 1937, Act 5130d), and paid under protest.

The plaintiff was and is engaged in the business of transporting property for hire over the public highways of the state by motor vehicle and was therefore taxable for the years involved pursuant to the provisions of said act. The act is entitled, "An act imposing a license fee or tax for the transportation of persons or property for hire or compensation upon the public streets, roads and highways in the State of California by motor vehicle." It requires operators of motor vehicles within the state engaging in the business of transporting persons or property over any public highways within the state for compensation or hire to obtain a license. The operator is required by section 4 to make a monthly report "showing the gross receipts from operation of such operator for the preceding calendar month." The section also provides that a "license tax equal to three per cent of

gross receipts from operation'' shall be assessed, payable monthly (§ 5). Section 6 provides that every operator must keep an accurate record of all gross receipts from operation. Section 9 provides that if the total taxes paid by any operator, including license and all other taxes on property used exclusively in the business of transporting persons or property for hire over the public highways of the state exceed five per cent of the gross receipts from operation of such operator in this state, the difference between the amount paid and five per cent is credited on license taxes thereafter accruing and the balance refunded. Section 14 provides that the act does not apply to motor vehicles operated exclusively within incorporated cities or towns or operating between incorporated cities or towns where no portion of the public highway outside of the corporate limits of the cities or towns is traversed.

Section 1(a) provides that the word ''operator'' shall include all persons or corporations who operate motor vehicles upon any public highway in this state and thereby engage in the transportation of persons or property for hire or compensation either directly or indirectly.

Section 1(d) reads: ''The term 'gross receipts from operation' shall include all receipts from the operation of such motor vehicle or motor vehicles beginning and ending entirely within this state and a proportion based upon the proportion of the mileage within this state to the entire mileage over which such business is done of gross receipts of such operator on all business passing through, into or out of this state, or partly within and partly without this state.''

In its return for the years 1935 and 1936 to the Board of Equalization the plaintiff reported its gross receipts from all transportation business in the state exclusive of hauls excepted by section 14 of the act. In said returns, however, the plaintiff claimed as deductions 40 per cent of the gross receipts which it computed was derived from loading and unloading operations, also additional sums derived from pick-up and delivery service within municipalities. The Board of Equalization disallowed deductions of $25,533.32 for loading and unloading operations and $1,010.68 for pick-up and delivery service on the 1935 returns; and $25,570.28 loading and unloading operations, and $1,400 pick-up and delivery service on the 1936 returns. It assessed an additional tax of $2,016.63 for those years, which the plaintiff paid under protest.

It is the plaintiff's contention that inasmuch as the Motor

Vehicle Transportation License Tax Act was formulated and enacted for the purpose of raising revenue for construction of public highways (§ 16; *In re Bush,* 6 Cal.2d 43 [56 P.2d 511]; *Bacon Service Corp.* v. *Huss,* 199 Cal. 21, 29 [248 P. 235]; *Valley Motor Lines, Inc.* v. *Riley,* 23 Cal.App.2d 208 [73 P.2d 288]), only that portion of the gross receipts which is derived from actual transportation activities over the highways is subject to the tax of three per cent on "gross receipts from operation." No deduction was claimed by the plaintiff for the loading and unloading time consumed between the truck and the sidewalk. The plaintiff argues that the definition contained in section 1(d) confines the word "operation" to the actual transporting of the goods over the public highways, including sidewalk loading and unloading, as distinguished from the loading and unloading of such goods between the sidewalk and the house. The record shows that whenever packing and crating labor was required as distinct from dismantling and moving furniture and goods between the house and the sidewalk preparatory to loading and unloading, a separate charge was made and the paid charges for such labor were not included by the Board of Equalization in the gross receipts subject to the tax. But the plaintiff claims that it should be allowed a deduction for a proper proportion of the gross receipts which represents the revenue from operations between the sidewalk and the house, estimated by it at about 56 per cent; also that it should be permitted deductions for the amounts separately indicated on its way bills received from pick-up and delivery service within municipalities. In intercity hauls of small consignments the plaintiff found it more convenient to pick up and deliver with the use of smaller trucks between the point of pick-up or delivery and the larger truck or van which was to transport or which had transported the goods over the public highways. In other intercity hauls the van or truck received and discharged the load directly at the door. The plaintiff contends that receipts from such separate pick-up and delivery service within municipalities in connection with intercity hauls should be excepted from assessment under the act because that service is conducted entirely within municipalities and does not employ any part of the public highways.

Both sides concede that there is no decided case which directly involves the point considered under the first claimed deduction. However, we are of the opinion that the plain language of the act determines the issue. This court has

heretofore held that "gross receipts from operation" is plain language which requires no interpretation. (*Pacific Gas & Electric Co.* v. *Roberts,* 176 Cal. 183 [167 P. 845]. See, also, *McHenry* v. *Alford,* 168 U.S. 651, 666 [18 S.Ct. 242, 42 L.Ed. 614] ; *State* v. *United Electric Light & Water Co.,* 90 Conn. 452 [97 A. 857].) In the case of *Pacific Gas & Electric Co.* v. *Roberts, supra,* somewhat similar provisions adopted in section 14 of Article XIII, applying to public service corporations, were denominated "perfectly plain, unequivocal language," and the contention that "gross receipts" meant "gross earnings" was rejected. It was held that the language did not contemplate any deduction from the "gross receipts from operation." In the case of *McHenry* v. *Alford, supra,* a similar phrase was said to mean "earnings (receipts) which arise because of its operation," without any undesignated exceptions. ██ Likewise in the present case "gross receipts from operation" must be taken in its plain sense without limitation or deduction save as expressly modified by the Legislature. The only modification pertinent in this case is that contained in the definition of "gross receipts from operation" which adds to the foregoing quoted phrase the words "of such motor vehicle or motor vehicles beginning and ending entirely within this state . . .", etc. The plaintiff seeks to have this court interpret the legislative language as applying only to that proportion of the gross receipts from its operation of motor vehicles which is derived from the actual use of the truck on the public streets and highways. "Gross receipts from operation of motor vehicles" is language sufficiently plain. It was undoubtedly intended to be limited to the transportation activities of a company which might also be engaged in warehousing, selling, or other business not strictly related to transportation of goods or persons. The plaintiff concedes that the words "operation of motor vehicles" as used in the definition include loading and unloading activities at the sidewalk. However, the goods must be taken to and from the sidewalk as an inseparable preparatory activity connected with the loading and unloading operations. We therefore fail to see how the plaintiff can be excused from the payment of a proportion of the license tax based on its claim that more than 50 per cent of gross receipts from operation of motor vehicles was derived from time devoted to such preparatory activities. The preparatory activities sought to be excepted are just as much a part of and essential to transportation, and therefore to operation of motor vehicles, as are actual loading

and unloading operations which are also preparatory to the rolling of the vehicle along the highways. To adopt the plaintiff's suggestion would be to add to the language of the definition a limitation which the Legislature did not express and which it must be deemed it did not intend. If the Legislature intended to exclude from "operation" as defined every incidental service and activity customary and essential in the matter of transporting goods for compensation and hire, it could easily have said so. By failure to use any such limiting words the Legislature indicated its intention of not so limiting or circumscribing the meaning or scope of the act. (*In re Bush*, 6 Cal.2d 43 [56 P.2d 511].) Under the applicable rules of construction this court may not supply any language which the Legislature must be deemed to have omitted intentionally.

There is no constitutional objection urged or which could be urged to the application of the plain language of the act. All of the required safeguards have been afforded by the Legislature in the exercise of the taxing power. No unreasonable discriminations are involved and in the absence of any such unlawful classification the act is constitutional. (*Bacon Service Corp.* v. *Huss*, 199 Cal. 21 [248 P. 235].) It is not urged that imposition of a tax equal to a percentage of gross receipts from operation of the business of transportation including all of its connected incidental operations and so-called "accessorial" services or operations for the purposes stated in the act is not a proper exercise of the taxing power. The fact that in determining the fixed rate to be charged for transportation operations or services the Railroad Commission of the state computed that 40 per cent of transportation operations was attributable to accessorial services (see § 10, Highway Carriers Act, Stats. 1935, p. 878) is not a factor bearing upon the legislative intent in adopting the definition here under consideration. The fact that the Legislature in the present act did not distinguish between actual rolling on the public highways and any accessorial services is an argument that it intended no such distinction.

No special significance may be given the fact that the license tax under the present act is not, strictly speaking, a so-called "in lieu" tax, insofar as any applicability of the case of *Pacific Gas & Electric Co.* v. *Roberts, supra,* is concerned. It is true the license tax here involved is not an all-purpose tax and that ad valorem taxes are assessable; but

it may be considered in the nature of an "in lieu" tax because of the provisions of section 9 of the act which limit the total taxes payable on property usable in the business of transportation, including license taxes, to five per cent of gross receipts from operation as defined by the act.

Nor may any distinction be made by the plaintiff on its returns between intercity hauls which require for convenience an intra-city pick-up and delivery service, and those which do not require such service in the convenient method of initiating or terminating such intercity transportation. The plaintiff in this connection relies on *Pioneer Express Co.* v. *Riley,* 208 Cal. 677 [284 P. 663]. In that case the plaintiff's activities were confined exclusively to intercity hauls. Another company, formerly a competitor of the plaintiff, abandoned all intercity activities and confined itself to intra-city business exclusively, including the pick-up and delivery service required by the plaintiff. It appeared that the plaintiff in that case in good faith did not engage in intra-city pick-up and delivery service as part of its intercity hauls. It was held that it had paid its tax in full, based on the report of intercity operations as conducted by it. No invalidity may be said to attach by reason of the fact that the plaintiff here is taxed on its intra-city pick-up and delivery service in connection with its intercity hauls as distinguished from its strictly intra-city business. (*In re Bush, supra.*) The trial court in the present case properly concluded that receipts from all hauls which originated in one city for transportation over the public highways or which terminated in a city after such transportation should be treated without distinction as taxable gross receipts from operation.

It is shown that receipts from intra-city business as excepted from the act were not included in the computation of gross receipts from operation as defined by the act. Nor were charges for labor furnished for the purpose of packing and crating goods, or warehousing, included in the gross receipts subject to taxation. All exceptions and limitations provided by the act were contemplated in the additional assessment paid under protest by the plaintiff. The trial court correctly concluded that the assessment of the additional tax was in accordance with the statute.

The judgment is affirmed.

Traynor, J., did not participate herein.

CURTIS, J.—I dissent.

The tax which is the subject of this action is claimed by the state under the provisions of "An act imposing a license fee or tax for the transportation of persons or property, for hire or compensation upon the *public streets, roads and highways* in the State of California by motor vehicle, etc." (Italics ours.) (California Motor Vehicle Transportation License Tax Act [Stats. 1933, p. 928, as amended Stats. 1935, p. 2176].)

Under section 1(a) of said act "The word 'operator' shall include all persons, firms, . . . who operate motor vehicles upon any public highway in this state and thereby engage in the transportation of . . . property for hire or compensation, etc."

Section 1(d) reads as follows: "The term 'gross receipts from operation' shall include all receipts from the operation of . . . motor vehicles. . . ." Section 2 of said act provides that "Each operator of a motor vehicle within this state who transports or desires to transport for compensation or hire . . . property upon or over any public highway within this state shall make application to the State Board of Equalization . . . for a license to operate motor vehicles for the transportation of . . . property for hire or compensation over public highways in this state."

Under section 2 of the act, the Board of Equalization "shall issue to such applicant a license to transport for compensation or hire . . . property upon or over any public highway within this state." Section 3 of said act makes it unlawful after the effective date of the act for any person, firm, etc., to operate any motor vehicle for the transportation of persons or property for hire or compensation over the public highways of the state without obtaining such license.

Under section 4 of said act each operator is required to file on or before the tenth day of each month with the Board of Equalization "a verified report . . . showing the gross receipts from operation of said operator for the preceding calendar month, and such other information relating to his or its operations as said board may require, to enable the board to make the assessment for which provision is herein made. A license tax equal to three per cent of gross receipts from operation derived on and after the first day of the month after the effective date of this act, shall be levied and assessed by said board."

It will thus be seen from the title of said act and from

each of the sections thereof, where the subject is mentioned that the operations of a licensed operator under the provisions of this act, are confined to the transportation of persons or property for hire or compensation over the *public highways of this state*. It is upon such operations, and upon such operators only that the license tax is assessed. Whatever services are rendered by the operator over and above such services, are not made subject to any tax. These excepted operations would include any and all services rendered by the operator before the property to be transported over the highway reaches the highway and such services as may be rendered after the transported property leaves the highway.

The majority opinion strongly relies upon the case of *Pacific Gas & Electric Co.* v. *Roberts,* 176 Cal. 183 [167 P. 845], for a proper construction of the words "gross receipts from operation." In that case, section 14 of article 13 of the Constitution, under which the tax enacted in that case was levied, provided that the levy of the tax was upon "gross receipts from the operation of such companies," while in the present case the statute provides that the tax is levied upon "gross receipts from the operation of motor vehicles." Comparing these two enactments, it is apparent that the section of the Constitution in the Roberts case providing for the levy of the tax upon the "gross receipts from the operation of the company" was much broader than the present statute which limits the tax to be levied to "gross receipts from the operation of the motor vehicles." In one case the gross receipts of *the company* are taxed while in the other only the gross receipts from *the motor vehicles* are the subject of the tax. As a motor vehicle is defined as "a vehicle operated upon or over the public highway" it seems clear that the legislative intent was to levy a tax only on those receipts from operation of vehicles upon the public highway.

For the reasons stated herein, I think the judgment should be reversed.

Edmonds, J., concurred.